# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**GLADWYN E. LOPEZ,**

          **Plaintiff,**

**v.**                                         **Case No. 2:12-CV-0598-FtM-DNF**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the United**
**States Social Security Administration,**

          **Defendant.**

_____/

## OPINION AND ORDER

      The Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

      Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, the Commissioner's decision in this case is **AFFIRMED**.

## I.   Background

      The Plaintiff filed for DIB on July 24, 2009, alleging an onset of disability on November 23, 2003. R. 90-93. The Plaintiff's application was denied initially and upon reconsideration. R. 59-60. The Plaintiff requested and received a hearing, which was held on January 18, 2011 before ALJ Frederick McGrath (the "Hearing"). R. 39-51. At the Hearing, the Plaintiff amended his date of alleged onset to October 16, 2006. R. 39-40. In a decision dated February

18, 2011 (the "Decision"), the ALJ found the Plaintiff not disabled as defined under the Act.  R. 24-31.  The Plaintiff timely exhausted his administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II.  The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

In his Decision, the ALJ performed the required five-step sequential analysis.  R. 24-31. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date through his date last insured, which was December 31, 2009.  R. 26.  At step two, the ALJ determined that the Plaintiff suffered from the severe impairments of asthma, sinusitis, gastroesophageal reflux disorder ("GERD"), polyps, and sleep apnea.  R. 26. At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 26.  Next, the ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work.  R. 26-30.  At step four, the ALJ determined that the Plaintiff was capable of performing past relevant work as a network

administrator.  R. 30.  Based on his finding at step four, the ALJ concluded that the Plaintiff was not disabled under the Act.  R. 31.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g).  Further, when the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"  *Id.*  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote v. Chater*, 67 F.3d 1533, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).  Finally, since the Plaintiff proceeds *pro se* in this case, the Court construes her arguments liberally.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.")

**IV. Discussion**

The Plaintiff challenges the ALJ's Decision on two grounds:

1)        The ALJ erred by failing to incorporate all of the Plaintiff's functional impairments into his RFC assessment;[1] and

2)        The case should be remanded for consideration of new and material evidence not included in the administrative record.

 For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

**A.        The ALJ's RFC Assessment**

First, the Plaintiff argues that the ALJ erred by failing to incorporate all of his functional impairments into his RFC assessment.  "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).  In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010).  However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Further, in order to be entitled to disability insurance benefits under Title II of the Act, a claimant must establish that he became disabled on or prior to the expiration of his insured

---

[1] For the sake of brevity, the Court combines the Plaintiff's first three arguments into a discussion of the ALJ's assessment of the Plaintiff's RFC.

status.  *See* 20 C.F.R. §§ 404.315; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that a claimant must prove he was disabled on or before the date last insured for DIB).  In this case, the Plaintiff's insured status expired on December 31, 2009.  R. 24, 26, 98-99.  Thus, for the purposes of determining disability, the relevant period at issue is from October 16, 2006 to December 31, 2009.  *See Burden v. Barnhart*, 223 F. Supp. 2d 1263, 1268 (M.D. Fla. 2002) ("If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.").

In his Decision, the ALJ discussed the Plaintiff's longitudinal record of medical treatment during the relevant period.  From October 2006 to May 2009, the Plaintiff underwent treatment at Adult & Pediatric Allergy & Asthma Associates and "Specialist in Healthcare PA" for symptoms related to the Plaintiff's breathing, but progress notes revealed generally normal functionality with mostly mild findings consistent with the record.  R. 322-46, 348-83.  On January 3, 2008, Richard Ming-Cheng Liu, M.D., performed a septoplasty operation on the Plaintiff to help alleviate severe polyposis and chronic sinusitis.  R. 168.  In an April 7, 2008 chart note, Dr. Liu noted that the Plaintiff's symptoms continued to persist and were, in fact, worsening.  R. 174.  Upon examination, Dr. Liu observed polyposis completely filling the surgical site and stated that he was "dealing with quite a severe inflammatory process."  R. 174.  Dr. Liu recommended that the Plaintiff continue a long-term regimen of low-dose prednisone.  R. 174.  On May 7, 2008, the Plaintiff presented to Dr. Liu for a follow-up examination, in which the Plaintiff reported "feeling quite good."  R. 176.  Dr. Liu noted that the Plaintiff was "breathing well and has no chest tightness."  R. 176.  Further, "[e]xamination of the nasal cavity show[ed] excellent healing," as the "polyposis [had] really shrunken down nicely with the chemical polypectomy," and the Plaintiff's "oral cavity and oropharynx [were] normal."  R. 176.

The Plaintiff saw Dr. Liu once again on May 20, 2008 and reported that his "symptoms had completely resolved." R. 173.  Upon examination, Dr. Liu noted that the Plaintiff's sinuses were "wide open," although some residual symptomology persisted.  R. 173.

The Plaintiff was seen by a number of doctors over the subsequent year for follow-up examinations.  In a September 16, 2008 examination note, Kamal K. Mubarak, M.D., stated that the Plaintiff had "slightly prolonged expiration and respiratory wheezes, more so on the right side."  R. 183.  However, the "rest of the examination was unremarkable."  R. 183.  In a December 9, 2008 examination note, Robin D. Carrie, A.R.N.P., stated that the Plaintiff "report[ed] that his cough [had] completely resolved."  R. 187.  Nurse Practitioner Carrie noted that a CT scan of the Plaintiff's chest was performed on October 20, 2008, which was "read as normal lung parenchyma without explanation for chronic cough or shortness of breath."  R. 187.  In a March 4, 2009 examination note, Nurse Practitioner Carrie reported that the Plaintiff had been off prednisone for approximately two months, but his respiratory symptoms of shortness of breath and cough had remained stable.  R. 189.  In a March 23, 2009 examination note, Eric M. Jaryzak, M.D., found that, in general, the Plaintiff was a "well-developed, well-nourished male in no apparent distress."  R. 192-93.  Dr. Jaryzak noted that the Plaintiff remained concerned about shortness of breath and excessive coughing up of mucus, but findings upon examination were relatively normal.  R. 192-93.  In an April 20, 2009 examination note, Robert Gamble Thomas, M.D., stated that a recent CT scan revealed that the Plaintiff has "a good open nasal airway with some mucosal thickening as well of the ethmoid sinuses and the frontal sinus."  R. 194.  Dr. Thomas noted that since the Plaintiff was "breathing well through his nose at this time and not having any symptoms of headache, facial pain or pressure, congestion, or any other complaints that he may discontinue the use of his tobramycin and betamethasone SinuNeb

treatments."  R. 195.   Dr. Thomas concluded that the Plaintiff's sinus symptoms were "well-controlled," and the Plaintiff was "asymptomatic…."  R. 195.   In a June 17, 2009 examination note, John D. Harwick, M.D., noted that while the Plaintiff "did have significant mucosal thickening throughout his sinuses, … he was basically asymptomatic as he denied facial pain or pressure, and did not have difficulty breathing throughout his nose."  R. 198.   In a July 26, 2009 examination note, Ramon Pabalan, M.D., observed that the Plaintiff's breathing was clear and equal, and his lungs were in "no respiratory distress."  R. 218.   Dr. Pablan also found that the Plaintiff had "good strength throughout," and observed no mental deficiencies.   R. 218-19.  Finally, Dr. Pablan noted that the Plaintiff said "that he feels back to normal," and he was discharged "in good condition."  R. 220.   On September 30, 2009, the Plaintiff underwent a physical assessment by Karen Henrichsen, D.O., who diagnosed the Plaintiff with COPD, chronic rhinitis, and GERD.   R. 225-58.   However, findings upon examination revealed relatively normal functionality consistent with his existing respiratory symptoms. R. 225-58.

On December 10, 2009, the Plaintiff underwent a sleep study, in which Sunil N. Lalla, M.D., determined that the Plaintiff had "significant obstructive sleep disordered breathing that merits treatment."  R. 283.   Dr. Lalla recommended that the Plaintiff "use caution while driving and/or operating dangerous machinery until sleep apnea is treated."  R. 283.   Following a subsequent sleep study, Dr. Jaraad Khan noted that the Plaintiff responded well to a CPAP machine and "this therapy could be offered to the patient, if he is agreeable."  R. 425.   In the record, there was also evidence documenting symptoms related to the Plaintiff's GERD, but these symptoms appeared in treatment notes produced after the Plaintiff's date last insured.  R. 424-31.

At the Hearing, the Plaintiff testified that he stopped working as a network administrator because he developed a cough.  R. 43.  The Plaintiff stated that "the company … came out with their – with some form of offer, but I was going to retire anyway because I developed such a tremendous cough that I had to take – I had to take a penalty … to get out…."  R. 43.  The Plaintiff alleged that his sleep apnea causes him to "wake up during the course of the night" and makes him tired and stressed throughout the day.  R. 44.  Further, the Plaintiff stated that he has problems wheezing "[a]lmost all the time."  R. 44.  The Plaintiff testified that his sinusitis keeps him from doing "anything really physical."  R. 46.  When asked by the ALJ why he would not be able to work an office job, the Plaintiff responded:

> I mean, I'm always a productive person, and right now I could not function in an office – any kind of office job [phonetic], because if I walk upstairs, if I bend – if I bend over, I get shortness of breath and tightness in my chest.  If I – any kind of perfume, smoke, or anything in the office environment, because me – I can't smell, so I'm very sensitive in my nasal canal when it comes to stuff, and then I started coughing, and once I starts [phonetic] to cough, that sets off wheezing and other problems.

R. 48.  In an October 14, 2009 Function Report, the Plaintiff reported that, in spite of his alleged impairments, he is able to do light exercise, dress, bathe, perform household chores, drive a car, walk, shop in stores, and handle his finances.  R. 117-20.  When prompted to describe his physical abilities, the Plaintiff indicated that he was unable to do "anything physical (50 lbs)," and could walk for approximately one and a half miles before needing to stop and rest.  R. 122.  The Plaintiff stated that the "side effects of the medications affects [his] memory," but also stated that he can pay attention "as long as [he has] to," follow written instructions "very well," follow spoken instructions "well," and handle stress "better than most."  R. 122-23.

In his Decision, the ALJ determined that the Plaintiff had the following RFC:

> ….[T]he claimant had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours out of an 8

hour day; and sit for 6 hours out of an 8 hour day with occasional climbing of ramps/stairs, ladders, ropes and scaffolds but should avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases and poor ventilation.

R. 26.  In support of this finding, the ALJ determined that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC assessment.  R. 30.  In addition, the ALJ considered a number of RFC assessments by state medical consultants, which were consistent with the ALJ's ultimate RFC assessment.  *See* R. 30, 260-67, 286-93.

After reviewing the Plaintiff's medical records, subjective testimony at the Hearing, and opinion evidence, the Court finds that the ALJ's RFC assessment was based on substantial evidence.  *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011). While there is a longitudinal record of the Plaintiff's breathing problems and sinus impairments, the ALJ considered this evidence in his Decision and adjusted his RFC assessment accordingly. R. 26.  In addition, the medical record indicates that the Plaintiff's septoplasty and accompanying medications stabilized his condition and allowed for relatively normal, asymptomatic functionality throughout 2008 and 2009.  Further, while the Plaintiff alleged a number of severe functional impairments at the Hearing, the Plaintiff's 2009 function report revealed a much milder picture of the Plaintiff's functionality.  R. 117-20.  In his brief, the Plaintiff asserts that his sinusitis has left him "with the inability to smell … and affects my sense of taste, each showing no improvement." (Dkt. No. 18 at 4.)  However, the Plaintiff does not explain how an inability to smell or taste limits his ability to work as a network administrator.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").  The Plaintiff directs the Court to a number

of records documenting symptoms associated with his GERD, although these records post-date the Plaintiff's date last insured and do not delineate any functional impairments deriving from the relevant period. *See* R. 424-31. For instance, the Plaintiff argues that his GERD leaves him with "abdominal pain and basketball-sized bloating of [his] stomach after eating meals." (Dkt. No. 18 at 4.) However, the only objective documentation of these symptoms is found in a January 4, 2011 treatment note from "Associates in Digestive Health," which post-dated the Plaintiff's date last insured by over a year. R. 481. The Plaintiff also argues that he suffers from a number of non-exertional impairments, including PTSD and memory loss. (Dkt. No. 18 at 2-3.) However, the medical record does not demonstrate that these impairments were severe during the relevant period. The Plaintiff contends that his memory impairment impacted his "ability to follow simple instructions" and caused "intermittent and unpredictable memory loss." (Dkt. No. 18 at 3.) However, these allegations are inconsistent with both the medical evidence on record as well as the Plaintiff's own statements from his October 2009 function report. R. 122-23. Overall, the Plaintiff has failed to put forth evidence relating to the relevant period that would compel a more severe RFC assessment. Thus, the Plaintiff's first argument is without merit.

### B.     Consideration of New and Material Evidence

Next, the Plaintiff argues that the Court should remand the case for further consideration of new and material evidence not included in the administrative record. The sixth sentence of 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner for consideration of new evidence that was previously unavailable. 42 U.S.C. § 405(g). "[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." *Ingram v. Commissioner*, 496 F.3d 1253, 1267 (11th Cir. 2007). To show that a sentence six remand is needed, "the

claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In addition to his brief, the Plaintiff submitted to the Court a number of medical records that were not included in the administrative record. (Dkt. No. 18 Ex. 1.) Having reviewed these additional records, the Court finds that they are not material to the ALJ's Decision because they do not relate to the relevant period in the Plaintiff's case. The majority of the newly submitted records were produced throughout 2012 and 2013, and these records do not specify that their findings are applicable to the relevant period in this case or the ALJ's Decision. There is, however, a letter from Harris A. Sachs, M.D., dated December 6, 2011, which concludes that the Plaintiff "has been suffering from respiratory compromise dating to 2006," and "has been unable to do any gainful employment due to his severe disability with respiratory compromise." (Dkt. No. 18 Ex. 1 at 2.) Nevertheless, the Court finds that Dr. Sachs's letter is of little probative value since the determination of whether a claimant can engage in gainful employment is not a medical opinion and is explicitly reserved to the ALJ. *See* 20 C.F.R. § 404.1527(d). In addition, Dr. Sachs's letter is unaccompanied by any objective medical findings or analysis of the Plaintiff's specific functional limitations.

Overall, the Plaintiff has failed to connect the newly submitted evidence to relevant period from the Plaintiff's amended date of alleged onset (October 16, 2006) to the Plaintiff's date last insured (December 31, 2009), and, therefore, there is not a reasonable possibility that the consideration of this evidence would change the ALJ's Decision. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Thus, the Plaintiff's second argument is without merit.

**V.  Conclusion**

Upon consideration of the foregoing, it is **ORDERED** that:

1.      The Commissioner's final decision in this case is **AFFIRMED**.

2.      The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE AND ORDERED** in Tampa, Florida on February 11, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Any Unrepresented Parties